# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODNEY EUGENE THOMAS,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,<br><br>　　　　Defendant.<br>_____/ | Case No. 1:17–cv–01512–SKO<br><br>ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(Doc. 1) |

## I.　INTRODUCTION

On November 9, 2017, Plaintiff Rodney Eugene Thomas ("Plaintiff") filed a complaint under 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

## II.　BACKGROUND

On October 23, 2014, Plaintiff protectively filed an application for SSI. (Administrative Record ("AR") 149–57.) Plaintiff alleges that he became disabled on January 1, 2000, due to back

---
[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 7, 9.)

and leg problems, pain in his arms and elbows, anxiety and depression. (AR 22, 28, 37, 43, 47, 55–56, 61, 77.) Plaintiff subsequently amended his alleged onset date of disability to October 23, 2014, the date he protectively filed his application for SSI. (AR 21, 73.)

Plaintiff was born on June 4, 1959, and was 55 years old when he filed the application. (AR 81, 149.) He has a high school education, having obtained a GED while in prison. (AR 81, 247.)

**A.     Relevant Medical Evidence[2]**

    **1.     Treating Physician Arturo Abalos, M.D.**

On December 15, 2014, Dr. Abalos, who had treated Plaintiff since December 9, 2014, completed a "Residual Functional Capacity ["RFC"][3] Questionnaire." (AR 254–56.) Dr. Abalos reported Plaintiff's diagnosis of chronic low back pain. (AR 254.) Dr. Abalos found that Plaintiff's pain was severe enough to frequently interfere with the attention and concentration required to perform simple work-related tasks. (AR 254.) He opined that Plaintiff could sit for 60 minutes at one time and could stand and walk for 30 minutes at one time. (AR 254.) Although Dr. Abalos opined that Plaintiff would require unscheduled breaks during the workday, he did not specify how many. (AR 254.) He found that Plaintiff could frequently lift 10 pounds, occasionally lift 20 pounds, and never lift 50 pounds. (AR 255.) Plaintiff had no limitations in repetitive reaching, handling, or fingering. (AR 255.) Dr. Abalos estimated, "based upon [his] experience with [Plaintiff], and based upon objective medical, clinical, and laboratory findings," that Plaintiff was likely to be absent from work once or twice a month because of his impairments. (AR 255.)

    **2.     Consultative Examiner Nancy Nikkel, Ph.D.**

On January 31, 2015, psychologist Dr. Nikkel performed a comprehensive psychiatric examination of Plaintiff. (AR 245–50.) She observed Plaintiff to be appropriately dressed and

---

[2] As Plaintiff's assertions of error are limited to the ALJ's discrediting of the medical opinion of Nancy Nikkel, Ph.D,, the ALJ's alleged improper formulation of Plaintiff's mental RFC, and the application of that RFC at the fifth step of the sequential evaluation process, only evidence relevant to those arguments is set forth in this Order.

[3] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006).

neatly groomed.  (AR 245.)  His attitude was appropriate throughout the interview.  (AR 245.)

Plaintiff complained of "daily" and "severe" symptoms of depression and anxiety, specifically that he "is not able to around crowds of people due to anger and fear" and feels like "his life was wasted" after having been in prison and paroled in July 2014.  (AR 245–46.)  He claimed depressed mood, anhedonia, weight changes, and sleep problems.  (AR 246.)  Plaintiff reported that he saw a mental health provider while in prison for 5–6 months in the hopes it would "provide him with the ability to cope once he [was] paroled," but it did not.  (AR 246.)  He was not prescribed psychiatric medications.  (AR 246.)

Plaintiff reported taking college-level courses for industrial arts, welding, and machine shop.  (AR 247.)  He stated that since he has been paroled he tried to apply for jobs but he is "not able to work the computer and has no job skills."  (AR 247.)  Plaintiff lives in a group home and can clean and take care of his personal hygiene.  (AR 246–47.)  He does not grocery shop or cook.  (AR 247.)  He reports visiting his mother every day and watching television.  (AR 247.)

Upon mental examination, Dr. Nikkel found Plaintiff's thought processes logical and goal oriented.  (AR 248.)  Plaintiff denied psychotic symptoms and suicidal or homicidal ideation, although his thought content included themes of hopelessness since he has been paroled.  (AR 248.)  Plaintiff stated his mood was "sad," and Dr. Nikkel found his affect congruent with his stated mood, noting that he became tearful.  (AR 248.)  Plaintiff reported a decrease in appetite, stating that he had lost 20 pounds since he was paroled.  (AR 248.)

Dr. Nikkel found Plaintiff's immediate memory intact, although he encountered difficulty reciting digits forward and backward.  (AR 248.)  Plaintiff's recent memory was noted as fair, as he could only recall two of three objects.  (AR 248.)  He could recall personal data such as his mother's date of birth and her maiden name.  (AR 248.)  Plaintiff's fund of knowledge was within normal limits.  (AR 248.)  He demonstrated the ability to perform simple mathematical calculations correctly.  (AR 249.)  Dr. Nikkel found Plaintiff's concentration to be within normal limits, his abstract thinking concrete, and limited ability to differentiate.  (AR 249.)  Plaintiff's judgment and insight were fair and limited.  (AR 249.)  Dr. Nikkel assessed Plaintiff with adjustment disorder with depressed and anxious mood and a Global Assessment of Functioning ("GAF") score of 44.

(AR 249.)

According to Dr. Nikkel, Plaintiff's symptoms "appear to be severe" yet treatable. (AR 249.) The likelihood of recovery by Plaintiff was deemed to be poor. (AR 249.) Dr. Nikkel opined that Plaintiff "has the ability to perform simple and repetitive tasks," but "may have difficulty performing detailed and complex tasks due to his difficulties with attention and short term memory." (AR 250.) Plaintiff was found to have a "fair ability to accept instructions from supervisors and interact with coworkers and the public, as evidenced by his depressed and anxious demeanor." (AR 250.) Dr. Nikkel found Plaintiff is "not able to perform work activities on a consistent basis without special or additional instruction, as evidenced by his difficulties with short term memory and attention." (AR 250.) While he has a "fair" ability to maintain regular attendance in a workplace, he has a "poor" ability to complete a normal workday or workweek without interruption from a psychiatric condition, "as evidenced by his depressive and anxiety symptoms." (AR 250.) According to Dr. Nikkel, Plaintiff is "not able to deal with the usual stress encountered in a competitive workplace, due to the current severity of his symptoms and lack of sense of efficacy." (AR 250.)

### 3. Delano District Medical Center

On October 28, 2015, Plaintiff underwent a general medical exam, which noted "depression" and "anger." (AR 289.) A psychiatric referral was recommended. (AR 290.)

Plaintiff reported on January 18, 2016, that while working on his car he "picked up a rotor which belongs to a wheel of a tire and felt a slight strain from his back." (AR 287.) He complained of sciatic pain radiating down to both legs. (AR 287.) He was assessed with chronic back pain and provided Tylenol No. 3 for pain. (AR 287.)

In May 2016, Plaintiff was assessed with anxiety. (AR 283, 285.) Plaintiff's "history of anxiety" was also noted on August 3, 2016. (AR 282.)

### 4. Omni Family Health

On December 28, 2015, Plaintiff presented for depression and anxiety. He complained of anxious/fearful thoughts, depressed mood, difficulty falling and staying asleep, diminished interest or pleasure, excessive worry, and fatigue, but denied hallucinations or thoughts of death or suicide.

4

(AR 259.) Plaintiff reported "moderate" anxiety symptoms, which are "chronic" and "poorly controlled." (AR 259.) He was assessed with "major depressive disorder, recurrent episode, moderate" and anxiety, and was prescribed Remeron (mirtazapine), an antidepressant.[4] (AR 260.)

### 5. State Agency Physicians

On February 12, 2015, a Disability Determinations Service non-examining consultant, H. Amado, M.D., reviewed the record and assessed Plaintiff's mental RFC. (AR 47–50.) Dr. Amado opined that Plaintiff's ability to understand and remember detailed instructions was "moderately limited," but that he was "able to learn and retain simple instructions clearly explained." (AR 48.) Dr. Amado also found that Plaintiff was "moderately limited" in his ability to: carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (AR 49.)

Dr. Amado opined that Plaintiff would be able to implement simple instructions with adequate persistence/pace past the initial training period. (AR 49.) Plaintiff's ability to interact with the general public, to accept instructions and respond appropriately to criticism from supervisors, and to get along with coworkers or peers without distracting them or exhibiting behavior extremes, were all "moderately limited," with Dr. Amado opining that Plaintiff "would fair best in a low-stress setting with no more than incidental contact with the general public and no more than superficial interactions with prospective coworkers and supervisors." (AR 49.) Dr. Amado further found Plaintiff's ability to respond appropriately to changes in the work setting to be "moderately limited," but that Plaintiff would be able to adapt to routine changes in the work setting. (AR 50.) Dr. Amado concluded his mental RFC findings by explaining:

> The overall evidence shows that [Plaintiff] has a mental impairment that limits his ability to sustain the performance of detailed or complex tasks. However, he retained the [RFC] to understand,

---

[4] *See* "Mirtazapine," MedlinePlus website, U.S. National Library of Medicine and National Institutes of Health, available at https://medlineplus.gov/druginfo/meds/a697009.html (last visited August 16, 2018).

> remember, and carry out simple tasks. His concentration is sufficient to allow him to complete such tasks at an acceptable pace. He is able to interact superficially and instrumentally with supervisors and coworkers but would have difficulty dealing with the public more than incidentally in a service capacity. He can make simple work-related decisions, adhere to basic safety rules, and adjust to changes in routine in a typical non-public, unskilled setting.

(AR 50.)

On June 25, 2015, a Disability Determinations Service non-examining consultant, Cory A. Brown, Psy.D., reviewed the record and analyzed the case on reconsideration. (AR 62–65.) Dr. Brown adopted the initial decision RFC assessment, and further explained Plaintiff is capable of: learning and remembering simple tasks, completing a work schedule with simple tasks; dealing with supervisors and having minimal contact with coworkers and the public; and "adapting through a work schedule with typical stress and simple changes." (AR 63–65.)

**B.     Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on February 24, 2015, and again on reconsideration on July 2, 2015. (AR 89–92, 95–100.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 101–07.)

On March 1, 2017, Plaintiff appeared with counsel and testified before an ALJ as to his alleged disabling conditions. (AR 23–33.) Plaintiff testified that he experienced depression and anxiety and was prescribed "some medication to help [him] sleep." (AR 28.) He testified that he attends a self-help group once a month to "deal[] with parole." (AR 24.) According to Plaintiff, he cannot go to the grocery store alone to shop for groceries because he would encounter "too many people." (AR 32.)

A Vocational Expert ("VE") testified at the hearing that Plaintiff had no past relevant work. (AR 34, 35.) The ALJ asked the VE a hypothetical question, in which the VE was to consider a person of Plaintiff's age, education, and work experience, who was limited to medium work, limited to simple and routine tasks and involve no public contact. (AR 34.) The VE testified that such a person could perform work as an industrial cleaner, DOT code 381.687-018, specific vocational

preparation (SVP)[5] 2, of which there are 950,000 jobs in the national economy. (AR 34.) The VE further testified that such a person could perform work as a laborer in stores, DOT code 922.687-058, SVP 2, for which there are 80,000 jobs, and could also perform work as a hand packager, DOT code 920.587-018, SVP 2, for which there are 160,000 jobs in the nation. (AR 34.)

The ALJ then asked the VE a second hypothetical question considering the same person with the same capabilities as outlined in the first hypothetical, but who is limited to sitting 60 minutes in a workday, standing for 30 minutes in a workday, lifting up to 10 pounds, and would miss one or two days of work. (AR 34–35.) The VE testified that no jobs were available for that person. (AR 35.)

Plaintiff's counsel then asked the VE to consider a third hypothetical person who was limited to lifting 15 to 20 pounds occasionally and less than 15 pounds frequently, and who could "probably" stand six hours and sit six hours in an eight-hour workday. (AR 35.) Plaintiff's counsel inquired whether such a person would be "limited at best to a light exertional level," and the VE responded affirmatively. (AR 35.)

**C.     The ALJ's Decision**

In a decision dated March 10, 2017, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 73–82.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920. (AR 75–82.) The ALJ decided that Plaintiff had not engaged in substantial gainful activity since October 23, 2014, the application date (and the amended alleged onset date of disability) (Step One). (AR 75.) At Step Two, the ALJ found Plaintiff's following impairments to be severe: depressive disorder and degenerative disc disease. (AR 75.) However, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (Step Three). (AR 75–77.)

The ALJ then assessed Plaintiff's RFC and applied the RFC assessment at Steps Four and

---

[5] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id.*

7

Five. *See* 20 C.F.R. § 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff retained the RFC:

> to perform medium work as defined in 20 CFR [§] 416.967(c) except simple routine tasks with no public contact.

(AR 77.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" she rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record." (AR 77.)

The ALJ found that Plaintiff had no past relevant work (Step Four), but that, on the basis of the RFC assessment, Plaintiff retained the capacity to perform other work that existed in sufficient numbers in the national economy, specifically occupations such as industrial cleaner, laborer in stores, and hand packager (Step Five). (AR 81–82.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on September 13, 2017. (AR 1–3.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 416.1481.

### III. LEGAL STANDARD

**A. Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*,

180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920. The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.     Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citing *Tackett*, 180 F.3d at 1098). "Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by

inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund*, 253 F.3d at 1156 ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194,

1198 (9th Cir. 2008). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## IV. DISCUSSION

Plaintiff contends that the ALJ failed to articulate sufficient reasons for discrediting consultative examiner Dr. Nikkel's medical opinion and did not account for all of Plaintiff's limitations in determining Plaintiff's mental RFC. (*See* Doc. 13 at 11–18; Doc. 15 at 2–4.) Defendant responds that the ALJ properly assessed Dr. Nikkel's medical opinion and accounted for Plaintiff's mental limitations by limiting Plaintiff to simple and routine tasks. (*See* Doc. 14 at 4–9.)

**A.  The ALJ's Consideration of the Medical Opinions**

**1.  Legal Standard**

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Holohan v. Massanari*, 246 F.3d 1195, 1201–02 (9th Cir. 2001); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. *Holohan*, 246 F.3d at 1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830-31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. *Id*. at 830. The regulations require the ALJ to weigh the contradicted treating or examining physician opinion, *Edlund*, 253 F.3d at 1157, except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory,

11

minimally supported opinion rejected); *see also Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989). The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. *Lester*, 81 F.3d at 831.

### 2. The ALJ Erred in Her Assessment of the Opinion of Consultative Examiner Dr. Nikkel

Dr. Nikkel assessed Plaintiff with adjustment disorder with depressed and anxious mood and a GAF score of 44. (AR 249.) Her clinical findings included a sad affect congruent with his stated mood, noting that he became tearful. (AR 248.) She found Plaintiff's immediate memory intact, but noted his recent memory was fair, as he could only recall two of three objects. (AR 248.) Plaintiff's judgment and insight were fair and limited. (AR 249.) Dr. Nikkel opined that Plaintiff "has the ability to perform simple and repetitive tasks," but "may have difficulty performing detailed and complex tasks due to his difficulties with attention and short term memory." (AR 250.) Plaintiff was found to have a "fair ability to accept instructions from supervisors and interact with coworkers and the public, as evidenced by his depressed and anxious demeanor." (AR 250.) Dr. Nikkel found Plaintiff is "not able to perform work activities on a consistent basis without special or additional instruction, as evidenced by his difficulties with short term memory and attention." (AR 250.) While he has a "fair" ability to maintain regular attendance in a workplace, Plaintiff has a "poor" ability to complete a normal workday or workweek without interruption from a psychiatric condition, "as evidenced by his depressive and anxiety symptoms." (AR 250.) According to Dr. Nikkel, Plaintiff is "not able to deal with the usual stress encountered in a competitive workplace, due to the current severity of his symptoms and lack of sense of efficacy." (AR 250.)

Although not specifically identified by the ALJ as a basis for its rejection, Dr. Nikkel's opinion is contradicted by the medical opinion evidence of Disability Determinations Service psychiatric consultants Drs. Amado and Brown, who opined that Plaintiff was not significantly limited in his ability to sustain an ordinary routine without special supervision or in his ability to work in coordination with or in proximity to others without being distracted by them. (AR 49, 64.) Drs. Amado and Brown found only moderate limitation of Plaintiff's ability to complete a

normal workday and workweek without interruptions from psychologically based symptoms, and opined that Plaintiff would be able to adapt to routine changes in the work setting. (AR 50, 64–65.) Thus, the ALJ was required to state "specific and legitimate" reasons, supported by substantial evidence, for rejecting Dr. Nikkel's opinion.

In this case, the ALJ gave Dr. Nikkel's opinion "less weight" because:

> while she had the opportunity to examine [Plaintiff], her opinion is inconsistent with her own findings. For instance, she reported poor ability to perform work activities on a consistent basis due to short-term memory. However, the evaluation showed his immediate memory was intact. He has a poor ability to complete a normal workday due to depression and anxiety but the claimant was not taking any psychotropic medication. Moreover, despite his alleged mental health problems he was able to maintain his attention, concentration and overcome sadness long enough to make automotive repairs.

(AR 81.) An ALJ may properly discount an examining physician's opinion that is inconsistent with the medical record, including her own findings. *See Valentine*, 574 F.3d at 692–93 (contradiction between treating physician's opinion and his treatment notes constitutes specific and legitimate reason for rejecting opinion); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (noting that "an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, . . . or by objective medical findings") (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician . . . if that opinion is brief, conclusory, and inadequately supported by clinical findings.") (citing *Matney on Behalf of Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)).

Here, however, the ALJ's characterization of "inconsistencies" between Dr. Nikkel's opinion and her clinical findings is belied by the record. First, despite the ALJ's statement to the contrary, Dr. Nikkel's opinion that Plaintiff would not able to perform work activities on a consistent basis due to his difficulties with short term memory and attention is not inconsistent with her clinical findings regarding Plaintiff's memory functioning. While the ALJ is correct that Dr. Nikkel found Plaintiff's immediate memory "intact" (AR 81, 248), she ignores the fact that Dr. Nikkel deemed Plaintiff's recent memory "fair," as he could recall only two of three objects after five minutes. (AR 248.) Thus, far from contradicting Dr. Nikkel's opinion regarding

13

Plaintiff's limited ability to perform work activities on a consistent basis, her findings in fact support that opinion.

The ALJ also found Dr. Nikkel's opinion that Plaintiff had the poor ability to complete a normal workday due to depression and anxiety was undermined by the fact Plaintiff was "not taking any psychotropic medication," but such determination is not supported by the medical record as a whole. Although Plaintiff was not prescribed any psychiatric mediation at the time of Dr. Nikkel's examination of January 31, 2015 (AR 246), evidence in the record establishes that Plaintiff was later prescribed an antidepressant on December 28, 2015 (AR 260), and was taking the medication as recently as February 8, 2017 (AR 217). Indeed, that Plaintiff was prescribed a medication to treat his depression almost a year after his examination by Dr. Nikkel suggests, at a minimum, that his depressive symptoms persisted, yet the ALJ's decision makes no mention of this fact. Moreover, Plaintiff's failure at the time of his examination by Dr. Nikkel to seek treatment, and therefore medication, for his depression, is not a legitimate reason to reject Dr. Nikkel's opinion. *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) ("[T]he fact that [a] claimant may be one of millions of people who did not seek treatment for a mental disorder until late in the day is not a substantial basis on which to conclude that [a physician's] assessment of [a] claimant's condition is inaccurate."); *see also Ferrando v. Comm'r of Soc. Sec. Admin.*, 449 F. App'x 610, 611–12 (9th Cir. 2011) ("[F]ailure to seek treatment for his mental illness . . . is not a clear and convincing reason to reject his [treating] psychiatrist's opinion, especially where that failure to seek treatment is explained, at least in part, by [the claimant's] degenerating condition.") (citing *Regennitter v. Comm'r Soc. Sec. Admin.*, 166 F.3d 1294, 1299–1300 (9th Cir. 1999) (noting that the Ninth Circuit has "particularly criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because 'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation'" (quoting *Nguyen*, 100 F.3d at 1465)).

The ALJ's final reason for discounting the opinion of Dr. Nikkel is that Plaintiff "was able to maintain his attention, concentration and overcome his sadness long enough to make automotive repairs." (AR 81.) An ALJ may reject a medical opinion regarding a claimant's mental health

14

because the claimant's activities of daily life contradict it, but only if substantial evidence supports that conclusion. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (finding that inconsistency between doctor's opinion and claimant's "maintaining a household and raising two young children, with no significant assistance from her ex husband" supported discounting the doctor's opinion). The record must provide details about the nature, extent, and frequency of the activities for them to "constitute 'substantial evidence' inconsistent with [an examining physician's] informed opinion." *Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017).

Though the ALJ pointed to Plaintiff's "automotive repairs" as a reason for rejecting Dr. Nikkel's opinion regarding the effect of Plaintiff's depressive symptoms and attention and concentration limitations in the workplace (AR 81), the record contains only a single instance of Plaintiff lifting a car tire rotor in January 2016. (AR 287.) The ALJ did not develop a record regarding the extent to which and the frequency with which Plaintiff engaged in "automotive repairs" other than the single instance in January 2016, nor did the ALJ inquire into whether Plaintiff performed such activities alone or with the assistance of others. Absent specific details about Plaintiff's "automotive repairs," other than the single instance of lifting a car tire rotor, those activities cannot constitute "substantial evidence" inconsistent with Dr. Nikkel's opinion, and thus the ALJ improperly relied on such activities to reject such opinion.[6] *Trevizo*, 871 F.3d at 676. *See also Langdon v. Berryhill*, Case No. 3:16-cv-05871-TLF, 2017 WL 3188616, at *7 (W.D. Wash. July 26, 2017).

In sum, the ALJ erred in failing to provide specific and legitimate reasons supported by substantial evidence for giving "little weight" to the opinion of Plaintiff's examining physician, Dr. Nikkel. That error was not harmless because it was not "'inconsequential to the ultimate nondisability determination.'" *Molina*, 674 F.3d at 1115 (quoting *Carmickle v. Comm'r, Soc. Sec.*

---

[6] It is equally unclear how a single instance of lifting a car tire rotor is inconsistent with Dr. Nikkel's opinion regarding Plaintiff's mental limitations, and the ALJ's decision offers no elucidation from which the Court can find the existence of a specific and legitimate rationale. *See, e.g., Langdon*, 2017 WL 3188616, at *7 (W.D. Wash. July 26, 2017) (finding that the record did not support the ALJ's conclusion that the plaintiff's activities contradict her physician's opinion about her ability to concentrate where it was "is unclear . . . how Facebook or computer games would relate to any paid work activity, other than involving computers. These instead appear to be nothing more than leisurely pastimes."); *Delaplain v. Comm'r of Soc. Sec. Admin.*, No. 2:15–cv–02439–HZ, 2017 WL 1234133, at *5 (D. Or. Mar. 17, 2017) (finding that activities ALJ cited did not contradict doctor's opinion regarding limitations).

15

1 *Admin.,* 533 F.3d 1155, 1162 (9th Cir. 2008)). The ALJ's RFC assessment was that Plaintiff has the RFC to perform medium work limited to "simple routine tasks with no public contact." (AR 77.) Using the RFC, the VE testified that Plaintiff could perform as an industrial cleaner, a store laborer, and a hand packager. (AR 34.) A reasonable ALJ fully crediting Dr. Nikkel's opinion, particularly regarding Plaintiff's inability to perform work activities on a consistent basis and to deal with workplace stress, as well as his poor ability to complete a normal workday or workweek without interruption from his mental conditions, could have concluded that Plaintiff could not perform any of these occupations.[7] *See Stout*, 454 F.3d at 1056 (holding that ALJ's error in failing to consider lay testimony about limitations was not harmless where reasonable ALJ could conclude those limitations precluded employment).

**B. The ALJ's Error Warrants Remand for Further Proceedings**

When the Court finds that the ALJ committed prejudicial error, it possesses the discretion to remand or reverse and award benefits. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). Generally, if the Court finds that the ALJ's decision was erroneous or not supported by substantial evidence, the court must follow the "ordinary remand rule," meaning that "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). A remand for an award of benefits is inappropriate where the record has not been fully developed or there is a need to resolve conflicts, ambiguities, or other outstanding issues. *Id.* at 1101.

Where, as here, an ALJ fails to "give sufficiently specific reasons for rejecting the conclusion of [a physician]," it is proper to remand the matter for "proper consideration of the physician['s] evidence." *Embrey v. Bowen,* 849 F.2d 418, 422 (9th Cir. 1988); *see also Nguyen*, 100 F.3d at 1464–65, 1467 (remanding for further proceedings where ALJ failed to "set forth

---

[7] Dr. Nikkel's opined severe limitations of Plaintiff's mental functioning stand in stark contrast to the moderate limitations of social functioning and supervision that this Court in other cases has found is encompassed by a limitation in the RFC assessment to simple tasks performed in unskilled work. *See, e.g.*, *Menges v. Berryhill*, No. 1:16–cv–01766–BAM, 2018 WL 1567786, at *8 (E.D. Cal. Mar. 30, 2018) (finding limitation to simple, routine tasks adequately considered claimant's *moderate* limitations in getting along with peers or being supervised in a work-like setting); *Henry v. Colvin*, No. 1:15–cv–00100–JLT, 2016 WL 164956, at *18 (E.D. Cal. Jan. 14, 2016) (finding restriction to simple tasks encompassed claimant's *moderate* limitations in dealing with changes, social interaction, and low stress tolerance).

16

1 specific, legitimate reasons" for crediting opinion of nonexamining consultant over that of examining psychologist). Accordingly, the Court exercises its discretion and remands this matter for further proceedings so that the ALJ can reconsider the medical evidence, particularly Dr. Nikkel's opinion, regarding Plaintiff's mental impairments and their limitations on his ability to work. *See McAllister*, 888 F.2d at 603 (remanding to allow the Secretary to review the record and provide legally sufficient reasons for rejecting the treating physician's report and, alternatively, permitting the Secretary to award benefits). On remand, the ALJ shall properly assess the medical evidence as a whole, determine Plaintiff's RFC, and proceed through Steps Four and Five to find what work, if any, Plaintiff is capable of performing.

**C.     The Court Declines to Determine Plaintiff's Remaining Assertion of Error**

As the Court finds that remand is appropriate for the ALJ to reconsider Dr. Nikkel's medical opinion and reassess Plaintiff's RFC, the Court need not address Plaintiff's allegation of error concerning the ALJ's present RFC assessment and its failure to account for moderate limitations in concentration, persistence, and pace. *See, e.g., Newton v. Colvin*, No. 2:13–cv–2458–GEB–EFB, 2015 WL 1136477, at *6 n.4 (E.D. Cal. Mar. 12, 2015) ("As the matter must be remanded for further consideration of the medical evidence, the court declines to address plaintiff's remaining arguments.").

**V.     CONCLUSION AND ORDER**

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, VACATED and the case REMANDED to the ALJ for further proceedings consistent with this Order. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Rodney Eugene Thomas and against Defendant Nancy A. Berryhill, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:     **September 21, 2018**            /s/ *Sheila K. Oberto*
                                                                    UNITED STATES MAGISTRATE JUDGE